## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY DOMANTAS, | ) | |
| | ) | **No. 21 C 232** |
| Plaintiff, | ) | |
| | ) | **Magistrate Judge Gabriel A. Fuentes** |
| v. | ) | |
| | ) | |
| MENARD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

After tripping and falling at one of Defendant Menard, Inc.'s ("Menard")[1] stores in Joliet, Illinois, Plaintiff Kimberly Domantas ("Plaintiff") filed this one-count premises liability action against Menard, alleging she suffered injuries due to Menard's negligence. (Notice of Removal, Ex. A: Compl., D.E. 1-1.)  This matter is before the magistrate judge on consent.  (D.E. 24.) Following discovery, Menard moved for summary judgment ("Motion"; D.E. 35). The motion is now fully briefed.

## BACKGROUND

August 15, 2019 was the day the cat food went flying at a Menard store in Joliet, Illinois. Plaintiff visited the store that day in search of cat food. Defendant Menard, Inc.'s Statement of Material Facts ("DSOF"; D.E. 37) ¶ 1; Defendant's Memorandum in Support ("Def. Mem."; D.E. 36), Exh. C ("Domantas Dep."; D.E. 36-3) at 29-30.[2]  After Plaintiff found the cat food and loaded

---

[1] Defendant is named in the complaint as "Menard, Inc." but refers to itself as "Menards" in its brief. *See, e.g.*, Def. Mem. at 8, D.E. 36. The Court refers to Defendant as "Menard."

[2] Statements of Fact are identified as follows: "DSOF" for Defendant's Statement of Material Facts (D.E. 37); "Pl.'s Resp. DSOF" for Plaintiff's response to Defendant's Statement of Material Facts (D.E. 43); "PSAF" for Plaintiff's Statement of Additional Material Facts (D.E. 44); and "D. Resp. PSAF" for Defendant's Response to Plaintiff's Rule 56 Statement of Additional Material Facts (D.E. 46).

up her arms with roughly 10 small, square cans, she headed toward the checkout registers at the front of the store. As Plaintiff made her way to the end of one of the aisles on her way to a check-out register, she tripped and fell over a "long[,] skinny cement pole that was sticking out of a customer's cart that was located at the endcap to the aisle [Domantas] was walking down." DSOF ¶ 4. She then sustained injuries for which she now seeks recovery in this tort lawsuit. Compl. ¶ 8.

The parties do not dispute that just before Plaintiff fell, she was paying attention to the cashiers (check-out registers) ahead of her, and she saw neither the cart nor the pole over which she tripped as the pole protruded from the cart. DSOF ¶¶ 8, 9. As Plaintiff recalls, she "tripped over the pole and the cat food went flying." *See* Domantas Dep. at 31.

The summary judgment record includes a video recording of the final seconds of Plaintiff's fall, and the video appears to corroborate Plaintiff's recollection that she tripped over the pole as she walked toward the front of the store. Pl.'s Resp. DSOF ¶ 42.[3] The video, though grainy, shows an overhead view. *See* Def. Mem., Exh. 7 (showing Plaintiff falling to the floor at the very top edge of the frame, but both the cart and the pole are outside the frame and not visible). By the Court's count, nine metallic-looking objects (which the Court presumes to be the cans of cat food) are visible on the floor around an individual who also appears to be on the floor, and who the parties agree is Plaintiff. *See id.* But the video recording only shows Plaintiff on the floor – it does not show Plaintiff tripping or what caused her to trip. At the time of the incident, no one witnessed Plaintiff trip or fall. The issue on the instant summary judgment motion by Menard, though, is not whether Plaintiff tripped over the pole, but whether the record evinces a genuine issue of material

---

[3] The Court's observations are based on the still shots of the video that Menard included as an exhibit to its motion. Neither side supplied the Court with the actual video.

fact about whether Menard had a duty and/or breached such a duty to keep the end of the aisle clear of the protruding pole.

Menard employees Tami House and Sandra Guzman were working inside the store when Plaintiff fell. *See* DSOF ¶¶ 19, 32. House did not see the cart before Plaintiff fell. DSOF ¶ 38. Guzman testified that she had seen a customer leave the cart at the end cap to go somewhere else in the store. Def. Mem., Exh. E ("Guzman Dep."; D.E. 36-5) at 35-36. Plaintiff's supplemental Local Rule 56.1 statement asserts the following as an undisputed fact: "Approximately three minutes before she was informed of Plaintiff's fall, Ms. Guzman saw a man leave a cart *with at least three long poles protruding from it* at the end cap where Plaintiff fell, and watched him walk toward a different area of the store, leaving the cart unattended." PSAF ¶ 10, D.E. 46 (emphasis added). Menard left this assertion undisputed, except for the assertion that the cart was left "unattended." D. Resp. PSAF ¶ 10. In other words, Menard's Local Rule 56.1 statement does not dispute that about three minutes before Guzman learned of Plaintiff's fall, Guzman saw the cart at the end cap where the fall occurred and saw three long poles protruding from the cart. *Id.*[4] But it was not clear from this undisputed statement by Plaintiff (and nor is it clear in the deposition testimony of Guzman) that Guzman undisputedly saw the protruding poles *before Plaintiff actually fell*. In Menard's initial statement of undisputed facts, Menard stated that Guzman saw a male customer place the cart at the end cap about three minutes before Guzman learned that Plaintiff had fallen. DSOF ¶ 27. Menard states that Guzman then saw the male customer leave the cart. *Id.* ¶ 28. Menard's Rule 56.1 statement does not admit or deny that Guzman saw the poles

---

[4] As for a dispute over whether the cart was "unattended," notwithstanding Menard's assertion that it disputes that assertion, the deposition testimony of Guzman was that she had "seen when the guest had kind of left it there," and when she was asked whether she had seen the guest "leave the cart to go somewhere else in the store," she said: "Yeah. Like I seen him go towards like the shelving area, which is like not as far from that department." Guzman Dep. at 35-36.

protruding from the cart before Plaintiff fell. The question of what Guzman saw, and when, is important to whether summary judgment can be granted in the case. As we discuss further below, the record, though not crystal clear, does not show the absence of a dispute over the material fact of whether Guzman saw the protruding poles in time to know that they created a foreseeable risk of harm to Plaintiff or other invitees. The Court discusses this issue further below, in its analysis, along with the underlying Guzman deposition testimony in the case.

House, a cashier at Menard, was the first store employee to arrive at the scene. *See id.* at 29-30. House heard a loud noise that she said sounded like someone had dropped something. Def. Mem., Exh. D ("House Dep."; D.E. 36-4) at 22. The noise drew her attention to the area where Plaintiff fell, but House could not actually see the area from where she was standing at her register. *Id.* House summoned help from Guzman, the head cashier at Menard, and then House moved quickly to where she had heard the noise. *Id.* at 22-23; Guzman Dep. at 28. House testified that she found Plaintiff standing near where she had fallen. House Dep. at 22. House helped Plaintiff pick up the cans of cat food off the floor and then returned to the register. *See id.* at 23-24. House's testimony was of no help on the question of what Guzman (and thus Menard) knew about the protruding poles and when it knew about them.

## ANALYSIS

### I.     The Summary Judgment Standard and Respective Burdens

On summary judgment, the movant has the burden of showing that "no genuine dispute as to any material fact" exists and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Material facts are those that might affect the outcome of the suit. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). No "genuine" dispute exists if a court would be required to grant a Rule 50 motion at trial. *Id.* at 250-

51. The Court construes the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). "Summary judgment is only warranted if, after doing so, [the court] determine[s] that no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

However, the Court "need not draw inferences that are supported by only speculation and conjecture." *Woods v. City of Berwyn*, 803 F.3d 865, 869 (7th Cir. 2015); *see also Aguilar v. Gaston-Camara*, 861 F.3d 626, 630-31 (7th Cir. 2017). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "[T]he non-movant must 'go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor.'" *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014) (quoting *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013)). In other words, the non-moving party "must do more than raise some metaphysical doubt as to the material facts; [it] must come forward with specific facts showing that there is a genuine issue for trial." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). At this stage, "[t]he parties are required to put their evidentiary cards on the table …. Summary judgment is not a time to be coy …." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (internal citations and quotations omitted). "Thus, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (internal citations and quotations omitted).

The lack of clarity in the parties' respective Local Rule 56.1 statements on the important issue of whether and when Menard's had actual notice of the protruding poles before Plaintiff's fall calls to mind the importance of the rule in helping courts decide summary judgment motions. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted); *see generally Johnston v. DeVries*, No. 17 C 6183, 2021 WL 3930298, at *1-2 (N.D. Ill. Sept. 2, 2021). The movant makes proposed statements of fact, and the non-movant responds; where the parties disagree, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). The party opposing summary judgment may also submit "a statement of additional material facts that complies with LR 56.1(d)," L.R. 56.1(b)(3), as Plaintiff did here. As noted above, the parties' respective statements of material fact do not offer clarity on whether Guzman saw the protruding pole(s) before Plaintiff's fall, and although the parties appropriately cited Guzman's deposition testimony on that issue, the Court was left to judge from the testimony whether a basis exists to determine that summary judgment ought to be granted amid a lack of a genuine issue about whether and when Guzman saw the pole(s).

6

II.     **Additional Legal Background on Summary Judgment in Illinois Premises Liability Law**

Illinois supplies the substantive law in this diversity tort matter.  To establish negligence in Illinois, the plaintiff must show that the defendant owed a duty of care, that the duty was breached, and that the breach caused the injuries. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. The foregoing elements of negligence liability in Illinois are not to be treated as factors, and Plaintiff would have to prove all of them at a trial in this matter; accordingly, on summary judgment, Menard prevails if it shows only that Plaintiff cannot prevail on any one of the elements. *Keedi v. Menard, Inc.*, No. 20 C 50375, 2021 WL 5759272, at *2 (N.D. Ill. Dec. 3, 2021).

III.    **The Genuine Issues of Material Fact in This Case**

A.     **Existence of a Duty**

Menard argues that there is no genuine issue of material fact as to whether it owed a duty to Plaintiff, because under the Illinois doctrine of "open and obvious" hazards, Menard owed her no such duty.  Under the open and obvious doctrine, a party that owns or controls the land is generally "not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Keedi,* 2021 WL 5759272, at *3, quoting *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 16; *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003). "Obvious" means that "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Bruns*, 2014 IL 116998, ¶ 16, quoting Restatement (Second) of Torts § 343A cmt. b, at 219 (1965).  The analysis is objective, and the danger was open and obvious "if a reasonable person with the plaintiff's knowledge of the situation would have appreciated and avoided a hazard created by the defendant's actions." *Keedi,* 2021 WL 5759272, at *3, quoting *Dunn v. Menard*, 880 F.3d 899, 907 (7th Cir. 2018).

Menard also contends that Plaintiff's invocation of Illinois' "distraction exception" to the "open and obvious" doctrine does not defeat summary judgment. The "distraction exception" applies when the defendant "has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Dunn*, 880 F.3d at 909. In *Keedi*, the district judge broke down the Illinois Supreme Court's application of the distraction exception in *Bruns*, 2014 IL 116998, as follows:

> In *Bruns*, the nearly eighty-year-old plaintiff stubbed her toe on a crack in the sidewalk caused by the roots of a nearby tree, which the city declined to remove because of its historical status. *Id.* at 687, 21 N.E.3d at 690. *Id.* But the plaintiff in *Bruns* was not looking at the sidewalk crack because she was looking "towards the door and the steps" of the clinic. *Id.* at 693, 21 N.E.3d at 690. Nothing required the plaintiff to divert her attention, however. The court explained that the inquiry was not whether she was looking elsewhere, but why she was looking elsewhere. *Id.* She hadn't looked elsewhere to avoid another hazard or because of the foreseeable task at hand. *Id.* Thus, if she was distracted, it was a self-made distraction that the defendant could not foresee. *Id* at 693–94, 21 N.E.3d at 690 (quoting *Whittleman v. Olin Corp.*, 358 Ill.App.3d 813, 295 Ill.Dec. 482, 832 N.E.2d 932, 936 (2005)). "Were we to conclude, as plaintiff does, that simply looking elsewhere constitutes a legal distraction, then the open and obvious rule would be upended and the distraction exception would swallow the rule." *Id* at 694, 21 N.E.3d at 690. At bottom, the analysis is one of reasonableness; the court merely asks whether the defendant "should reasonably anticipate injury to those entrants on his premises *who are generally exercising care for their own safety, but who may reasonably be distracted.*" *Deibert v. Bauer Bros. Constr. Co.*, 141 Ill.2d 430, 152 Ill.Dec. 552, 566 N.E.2d 239, 243–44 (Ill. 1990) (emphasis added).

*Keedi*, 2021 WL 5759272, at *3. In *Keedi*, the plaintiff invitee at a Menard store was looking for tile glue on a store shelf and tripped on a box on the floor of the aisle as he looked ahead at the shelf to get the glue. 2021 WL 5759272, at *1. The court in *Keedi* denied summary judgment based on the distraction exception, reasoning that although the box was "in plain view, people watching where they were walking would have seen it," the question of whether that plaintiff was distracted by items on the shelves was one for the jury, insofar as the factual record "was not

sufficiently undisputed to make this determination on summary judgment, in part because the Court is not allowed to make credibility determinations at this stage." *Id.* at *3-4.

In the duty analysis, the Court sees this matter as more like *Keedi* and less like *Bruns*. The poles protruding from the end of a cart at the Menard end cap may well have been open and obvious.[5] A person exercising ordinary care likely should have seen and avoided them. Plaintiff argues, though, that Menard "reasonably should have anticipated that patrons carrying products for purchase in their arms would scan the cashier area [which was ahead of Plaintiff as she walked down the aisle with her cat food cans] for the appropriate line and lane to select as they exited the shopping aisles and walked in that direction." Plaintiff's Memorandum of Law in Response to Motion for Summary Judgment ("Pl. Mem."; D.E. 42) at 5. The Court sees little practical difference from Plaintiff's scenario, *i.e.*, scanning the checkout area to select a line, and the scenario in *Keedi*, *i.e.*, scanning the shelves to select a particular item for purchase. In this case, as in *Keedi*, a reasonable jury could find that Plaintiff was distracted, just as a reasonable jury could find that she was not. *See Keedi*, 2021 WL 5759272, at *4.

---

[5] The Court assumes for purposes of this motion that the condition was open and obvious, insofar as the genuine dispute over the facts surrounding the distraction exception defeats summary judgment on the question of whether a duty existed. If the question of the distraction exception were not part of the analysis, a basis might well exist to find a genuine dispute as to whether the poles in this case were open and obvious. Where plaintiffs have failed to notice a condition prior to slipping or tripping, courts have consistently found the open and obvious issue to be a question of fact. *See, e.g., Knauss v. Wendy's Old Fashioned Hamburgers of New York, LLC*, No. 16 C 7657, 2018 WL 4503943, at *1 (where plaintiff did not notice pothole before tripping, whether pothole was an open and obvious condition was a question of fact); *Ward v. KFC Corp.*, No. 07 C 5562, 2009 WL 497902, at *2 n.1 (N.D. Ill. Feb. 25, 2009) (where plaintiff claimed he did not see puddle of water before slipping, whether puddle was an open and obvious hazard was a disputed question of fact); *Buchaklian v. Lake Cty. Fam. Young Men's Christian Ass'n*, 314 Ill. App. 3d 195, 203-04 (2d Dist. 2000) ("We determine in this case that, where plaintiff was an invitee and had to walk over a mat in order to utilize the YMCA pool facilities, and where plaintiff may not have seen a defect in the mat before she tripped, genuine issues of material fact exist as to whether the defect in the mat was an open and obvious danger that plaintiff should have seen.").

As for the factual record in this case, it is not sufficiently undisputed to allow the Court to take this question from the jury. Menard claims that Plaintiff "was not paying attention and fell," but Plaintiff disputes this, citing to her deposition testimony that "she was focused on the cashiers ahead of her and not the area near the endcap where the pole was sticking out and caused her fall." PSOF, ¶ 20. More specifically, Plaintiff's testimony was as follows:

> Q.     Carrying the cat food or dog food cradled in your arms, was that obscuring your vision of the floor as you were walking?
>
> A.     No, there was nobody hardly – there wasn't a lot of people, and the registers were, like, right in front – were, like, ahead of me. I was looking at the cashiers ahead of me.
>
> Q.     So as you were walking down the aisle, you were just focused on the cashier?
>
> A.     Yes.

Domantas Dep. at 33-34.

In *Bruns*, the plaintiff looking elsewhere (in a direction other than the tree root in the sidewalk, deemed to be an open and obvious hazard) had nothing to do with the defendant's activities and could not have been foreseen by the defendant. But here, a reasonable jury could find that Menard could foresee that someone walking toward the checkout area to select a line might be looking forward in the direction of the checkout area, rather than at the poles protruding into the aisle near the floor, just as a reasonable jury in *Keedi* might have found that Menard could foresee that a customer's looking at store shelves to select an item might have distracted him as he walked toward a box in the aisle. The observation that a reasonable jury might find against Plaintiff on this issue does not warrant summary judgment.

B.      **Breach of Duty**

If Plaintiff succeeds in persuading a jury, she still would have to establish a breach of that duty by Menard, and on summary judgment, if there is a genuine dispute as to breach of duty, summary judgment must be denied.  As for breach of duty in the context of premises liability, Illinois courts "have repeatedly held that a business owner breaches its duty to an invitee who slips on a foreign object in three circumstances: (1) where the object was placed there by the negligence of the proprietor; (2) his servants knew of its presence; or (3) the object was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered (*i.e.*, the proprietor had constructive notice of the object)." *Haslett v. United Skates of America, Inc.,* 2019 IL App (1st) 181337, ¶ 41.  If there is no evidence that the premises owner defendant placed the object or created the hazardous condition, such defendants "can only be held liable if they knew of the hazard's presence, *i.e.*, had either actual or constructive notice" of the hazard. *Id.*, ¶ 52; *Pavlik*, 323 Ill. App. 3d at 1064.  *See also Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1064 (1st Dist. 2001) (holding that plaintiff had established genuine issue of material fact that the defendant had actual notice where the plaintiff was told by an employee that spilled the conditioner that the conditioner should have been cleaned up, and where her father was told by another employee that a clerk was supposed to clean it up but did not); *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033, 1038 (1st Dist. 2000) (stating that if "the landowner did not create the condition, the plaintiff must be required to establish that the landowner knew or should have known of the defect").

Here, the Court has little trouble concluding that the factual record is not sufficiently undisputed to allow Menard summary judgment on this point.  Menard's head cashier, Guzman, gave testimony indicating she was aware of the cart's presence at the end cap before Plaintiff's

fall, and her testimony indicated that she observed the poles protruding from the cart, even if her testimony is unclear as to precisely when she saw the poles or precisely how well her observations informed her (or would have informed a reasonable person) of the nature of the hazard:

> Q.  And the pipes that were sticking out of the front of the cart, were those into the aisleway, in other words, past the end cap into the aisle?
>
> A.  I would say a little bit, yeah.
>
> Q.  And prior to you walking over to Ms. Domantas, had you noticed or seen that cart at all?
>
> A.  Have I seen it?
>
> Q.  On that day.
>
> A.  Yeah. Like I seen when the guest had kind of left it there.
>
> Q.  And how long before Tami called you to the area was it that you had seen that cart?
>
> A.  I want to say within three minutes because I had just -- that's the only reason why I kind of remember. I know it was a male so I kind of remember that, that's how I kind of remember because it wasn't even that long to where then she told me that somebody had tripped over or fell or something happened.
>
> Q.  So did you see a man put the cart there and then leave the cart to go somewhere else in the store?
>
> A.  Yeah. Like I seen him go towards like the shelving area, which is like not as far from that department.

Guzman Dep. at 35-36.

As we noted above, the Local Rule 56.1 statements of the parties echo the lack of clarity about whether Menard had actual notice of the protruding poles: The parties do not dispute that Guzman saw the male customer place the cart at the end cap about three minutes before learning of Plaintiff's fall, and they appear to agree that Guzman saw the protruding poles before learning of Plaintiff's fall. Guzman's deposition testimony further suggested that she saw the protruding

poles before Plaintiff's fall. All in all, that testimony is sufficient to create a jury question as to whether Menard had actual notice of the protruding poles at least three minutes – or possibly more – before the accident. The record is too muddled to permit summary judgment on this issue, and if anything, it indicates enough on which a jury could conclude that Menard's knew of the poles in time to render the end cap area safe for its invitees.

Menard relies heavily on *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644 (7th Cir. 2014), but to no avail. *Zuppardi*'s relevance to notice in the premises liability context is to constructive rather than actual notice. *See* 770 F.3d at 651 ("Zuppardi concedes that there is no evidence that Wal-Mart had actual notice of the puddle"). Accordingly, the length of time during which the hazardous condition was present, the key issue in *Zuppardi*, bears upon whether the premises owner should have discovered it in the ordinary exercise of care. *Id.* As an actual notice case, the instant matter is unlike *Zuppardi* and two cases cited within it: *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603 (7th Cir. 2001), and *Howard v. Wal-Mart Stores, Inc.*, 150 F.3d 358 (7th Cir. 1998). Menard's reliance on these cases is unavailing, as neither holds that summary judgment is appropriate where there is evidence that the premises owner has actual notice of the hazardous condition. There was no such evidence in *Peterson*. 241 F.3d at 605. In *Howard*, the Seventh Circuit upheld a premises liability jury verdict for the plaintiff where "a hair's breadth" of evidence supported a reasonable conclusion that the premises owner's employee caused the spill that triggered plaintiff's fall. 150 F.3d at 359-60.

Under Illinois law, duty may be established where the premises owner (or its agents or employees) negligently places the foreign object causing the plaintiff's fall. *See Haslett*, 2019 IL App (1st) 181337, ⁋ 41. Where the premises owner did not negligently cause the hazard, the duty analysis turns to whether the owner had constructive or actual notice of the hazard. *Id.* The amount

of time the condition existed becomes relevant to whether the owner may be charged with constructive notice.  *See Pearson v. Pilot Travel Centers, LLC*, 2020 IL App (5th) 180505, ¶ 51. The Court did not identify any Illinois case, and nor did Menard present one, indicating that summary judgment could be granted to a defendant who had actual notice for too short an amount of time to allow a reasonable jury to conclude that defendant had notice at all.  Perhaps such a case might arise where the actual notice was so close in time to the accident, or the duration of the condition was so momentary, that the defendant could not have had a duty to take remedial action in time to prevent the accident.  But this is not such a case.  Here, Plaintiff will be able to point the jury to at least some evidence, beyond mere speculation, that Menard's head cashier saw and knew about the protruding poles for several minutes, or at least approximately three minutes, before the cat food flew.

The Court cannot conclude that no genuine dispute exists as to duty and breach of duty. As to duty, the record includes at least some evidence of actual notice of the protruding poles.  As to breach of duty, there is at least some evidence presenting a genuine issue on the distraction exception.  Menard may well dispute that this evidence should carry the day at trial, but that will be for the jury to decide.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (D.E. 35) is denied.

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

DATE: January 24, 2022

14