UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY DOMANTAS, ) | |
| ) | No. 21 C 232 |
| Plaintiff, ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| v. ) | |
| ) | |
| MENARD, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's motion for a new trial pursuant to Federal Rule of Civil Procedure 59 and/or remittitur (D.E. 149.) In its motion, Defendant argues that a new trial is warranted because the Court erred in sending to the jury during its deliberations an admitted exhibit consisting of 43 pages of Plaintiff's medical records, when only one page of those records was published to the jury. In the alternative, Defendant argues that the jury's $114,000 verdict in favor of the Plaintiff was against the manifest weight of the evidence and thus remittitur is required.[1]

**I.  Background**

On August 15, 2019, Plaintiff Kimberly Domantas was shopping for pet food at Defendant Menard Inc.'s ("Menard") Joliet, Illinois store when she tripped over a pipe that protruded from the bottom of a shopping cart that was sitting at the end of an aisle. Plaintiff injured her elbow in

---

[1] The Court is simultaneously granting Defendant's renewed motion for judgment as a matter of law ("JMOL") brought pursuant to Federal Rule of Civil Procedure 50(b). Under Rule 50(c), if a court grants a renewed motion for JMOL, it must also conditionally rule on any motion for a new trial in case the judgment is later vacated or reversed. Therefore, the Court is also conditionally ruling upon Defendant's motion for a new trial even though Defendant's reasons for a new trial rest on entirely different grounds than its motion for JMOL.

the fall and later sued Menard under a theory of premises liability. (D.E. 1: Complaint.) The parties stipulated that Plaintiff's injuries resulting from her fall were confined solely to her elbow, and Defendant read that stipulation from Dr. Michael Murphy, the doctor who treated Plaintiff's elbow injury immediately after her fall, to the jury. (5/14/24 Tr. at 348-51.)[2] Plaintiff's actual medical expense documentation was not presented to the jury.[3]

At trial, Defendant offered the testimony of Dr. Nirali Doshi, who treated Plaintiff for neck and back pain beginning on October 28, 2019, several months after the incident at Menard which is the basis for her lawsuit. By agreement of the parties, Defendant presented Dr. Doshi's testimony by reading portions of her prior deposition to the jury. (5/14/24 Tr. at 353-64.) As part of its presentation of Dr. Doshi's testimony, Defendant offered its only defense exhibit, Exhibit A ("DXA"), which defense counsel identified as "Dr. Doshi's chart" and which consisted of 43 pages[4] of Dr. Doshi's medical and office staff notes from her treatment of Plaintiff. (*Id.* at 355.) On motion by Defendant, the Court admitted the exhibit in full, with no comment or reservation from the parties about the admissibility of any portion of it. (*Id.* at 355-56.)

Through its presentation of Dr. Doshi's deposition, Defendant questioned Dr. Doshi about Plaintiff's medical issues, including back and neck problems and fibromyalgia (also elicited by

---

[2] The trial transcript appears in the record at D.E. 152, 153, 154, and 155. This Order will refer to the transcript by the date of the testimony and the transcript page number from these four docket entries, i.e., "5/14/24 Tr. at ___." With respect to the two separate parts of the transcript from 5/14/24, docket entry 155 covers pp. 115-248 and docket entry 153 covers pp. 249-426.

[3] Part of the joint stipulation the parties submitted with their pre-trial order included Plaintiff's medical bills for the treatment of her elbow injury in the amount of $6,185.79 (D.E. 136: pre-trial order at 2). Plaintiff elected not to read the joint stipulation into evidence during her case in chief; Defendant read the stipulation instead but elected to omit the paragraph listing the amount of Plaintiff's medical bills.

[4] The parties' final pretrial order states that DXA consists of 43 pages of medical records. In its motion, Defendant states that DXA consists of 38 pages and cites to "Ex. 1," but no exhibits are attached to the motion. The Court sees no difference in Defendant's argument if the medical records sent back to the jury consisted of 38 or 43 total pages; Defendant's argument is that only the single page published to the jury should have been sent back to the jury room during deliberations.

2

Plaintiff). Dr. Doshi testified that there was no evidence before her that Plaintiff's back and neck pain were related to her fall.[5] More specifically, Dr. Doshi testified that her notes reflected that Plaintiff told her she had a history of neck and low back pain going back three years, and that nothing in those notes suggested the Plaintiff told her that her fall at Menard had any impact on her neck and low back pain.[6] (*Id.* at 356-57.) Defendant also presented testimony of Dr. Doshi reviewing notes containing the results of an MRI upon Plaintiff's back on October 22, 2019, again to establish that nothing in those notes suggested that Plaintiff's back pain worsened after her fall at Menard. (*Id.* 357-58.) Although these pages from DXA were not published to the jury, they were clearly discussed as part of the evidence Defendant presented.[7] Defense counsel eventually adduced testimony from Dr. Doshi, referencing her notes in DXA, that Plaintiff's chronic neck, thoracic, and lumbar pain "as she told you she's had for three years is caused by, in her case, degenerative changes of the spine and fibromyalgia." (The doctor answered "yes.") (*Id.*)

Defendant then focused on page 42 of DXA, publishing it to the jury during questioning. This page was a record of a phone conversation Plaintiff had with Dr. Doshi's office staff, and it reflected Plaintiff calling the doctor's office in December 2019 asking to have an earlier medical record altered to show that her prior back pain became worse after the fall at Menard. (*Id.* at 359, 361-62.) Defendant published that single page after defense counsel's questioning of Dr. Doshi

---

[5] Dr. Doshi's medical records reflect, among other things, that Plaintiff received pain injections in her back, was prescribed antidepressants and muscle relaxants at various times, and had various other treatments the parties agree were not related to her elbow injury from her fall at Menard.

[6] Defendant did not identify for the jury which pages of Dr. Doshi's notes in DXA were the ones about which she testified in the deposition transcript excerpts it read into evidence.

[7] Defendant argues that the page of Dr. Doshi's notes it published to the jury was relevant solely for the purpose of attacking Plaintiff's credibility. While that may have been Defendant's intent, it does not change the fact that its presentation of Dr. Doshi's testimony and medical records also touched on Plaintiff's medical history, treatment for pain, and Dr. Doshi's acknowledgement that Plaintiff's back and neck pain did not result from her fall at Menard.

about Plaintiff's pain dating back to before her fall at the Menard store, prompting the Court to confirm on the record that all 43 pages of DXA were being admitted:

> Q. THE COURT: And counsel, that's what is now in evidence per the Court's ruling, right?
>
> A. MR. ANDREWS: All 43 pages.

(*Id.* at 360.) Defense counsel then proceeded to question Dr. Doshi about page 42 of DXA, eliciting testimony that Plaintiff called the doctor's office and reached a front-desk employee; that employee's notes reflect that Plaintiff called to ask Dr. Doshi to write in her chart that the bottom part of her back was worse (*Id.* at 361-62.) In response to Defendant's questions about that record of the phone conversation, Dr. Doshi testified that "we don't alter our notes based on patients calling in and saying: Can you write this? We wouldn't alter our notes based off of that." (*Id.* at 362-63.) Counsel then referenced a specific page from Dr. Doshi's notes, identified during the deposition as "page 56," in asking Dr. Doshi to confirm, as the doctor did, that she "did not have any evidence" that Plaintiff's fall at Menard's was connected to her presentation of symptoms from October 2019 through December 2020. (*Id*. at 364.) "Page 56" from the deposition exhibit was not linked to a page from DXA and was not published to the jury.

After closing arguments, Defendant objected to sending the entirety of DXA to the jury during its deliberation, arguing that it would be confusing to the jury because the document included medical records of treatment Plaintiff received that was not relevant to her trip and fall at Menard. (*Id.* at 465.) The Court disagreed, stating that Defendant's objection was one that should have been made either before it included the entire exhibit in the pretrial order, or else pursuant to an earlier motion under Federal Rule of Evidence 403 when it offered the exhibit into evidence. Therefore, the Court "overrule[d] a 403 objection to the jury getting to look at an exhibit that's already in evidence." (*Id.* at 465-66.) At the end of its deliberations, the jury returned a verdict in

favor of the Plaintiff for $190,000, which it reduced by 40 percent, to $114,000 to account for Plaintiff's contributory negligence.

## II.     Legal Standard

"A new trial may be granted if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (quotation marks omitted). "A party seeking a new trial based on a district court's alleged erroneous evidentiary rulings bears a 'heavy burden.'" *Weaver v. Mitchell*, No. 15 C 2950, 2019 WL 218745, at *5 (N.D. Ill. Jan. 16, 2019) (quoting *Alverio v. Sam's Warehouse Club*, 253 F.3d 933, 942 (7th Cir. 2001)). A new trial is warranted for purported evidentiary errors "only if the error has a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 440 (7th Cir. 2009). "[E]ven if a judge's decision is found to be erroneous, it may be deemed harmless if the record indicates the trial result would have been the same." That is, an evidentiary error only meets this standard if there is a significant chance that the ruling effected the outcome of the trial. *EEOC v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012).

In this case, Defendant's motion does not argue that the Court erred in admitting an exhibit into evidence but instead rests on the Court's decision to allow the entirety of DXA to go back to the jury during its deliberations, despite the fact that Defendant only published a single page to the jurors during the trial. As Defendant itself points out in its brief, "[i]f a party argues that properly admitted exhibits had some sort of improper influence on the jury, reversal also requires a showing of prejudice." *United States v. Adame*, 827 F.3d 637, 647-48 (7th Cir. 2016) (citation omitted). The *Adame* court explained that "[g]enerally, the district court is well within its discretion to allow properly admitted evidence to go back into jury deliberations; but it should prohibit exhibits that

5

'neither party has relied on, that have no relevance to any of the issues central to the case, or that are cumulative, prejudicial, confusing, or misleading,'" *id.,* citing *Deicher v. City of Evansville, Wis.*, 545 F.3d 537, 542 (7th Cir. 2008).

Defendant, after having used various unpublished pages of DXA during the Dr. Doshi examination before the jury, made only a vague argument at trial to exclude from DXA all but page 42 before the exhibit would go to the jury room. This argument, made shortly after closing arguments, posited that the information in the full exhibit was "sensitive" and that "there's a lot of medicine in there" that was "not related, that causes way too much confusion for non-medical people." (5/15/24 Tr. at 465.) The Court acted well within its discretion in rejecting this cursory and undeveloped argument made after Defendant had agreed on the record, as it was questioning a witness (Dr. Doshi) about DXA including pages other than page 42, to the admission of all 43 pages and then made selective use, during the Dr. Doshi testimony, of various pages of DXA not published to the jury. "[C]ivil litigants are entitled to a fair trial, not a perfect one, and … a new trial will not be ordered unless there was an error that caused some prejudice to the substantial rights of the parties," *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993).

On review of Defendant's new trial motion, the Court does not find that allowing the entirety of DXA to go back to the jury room was so confusing to the jury as to prejudice the substantial rights of any party so as to warrant a new trial.[8] As an initial matter, the Court notes that Defendant offers nothing but the barest conclusion, without citation to any legal authority, to

---

[8] It strikes the Court as procedurally unusual for Defendant to complain about a decision concerning one of its own exhibits. Presumably, Defendant's choice to include all 43 pages in a single exhibit – and to move to have them admitted into evidence that way – represents a trial strategy, as was the ultimate decision to publish only a single page out of that exhibit to the jury. As the Court pointed out, these decisions were squarely within Defendant's control, and any jury confusion, to the extent there was any, was a consequence of Defendant's strategic choices.

6

support its theory of jury prejudice or confusion, after having made its "there's a lot of medicine in there" argument at the critical time at trial.[9] Supposing that Defendant's theory is premised on an argument that the jury somehow misinterpreted DXA as evidence that Plaintiff's lower back and neck pain resulted from her fall in Menard, the Court's review of the exhibit and Dr. Doshi's testimony generates no clear basis to find that any such conclusion occurred or could have occurred. As for the exhibit itself, defense counsel arguably used it to considerable effect as the basis for an argument that Plaintiff was embarking upon a fraud on the Court by trying to manipulate the content of the medical record and thus bolster her argument that her fall was connected to her lower back pain, whereas the treating doctor would later testify at trial that there was no evidence of such a connection. Defense counsel made that very argument in closing, referring to page 42 of DXA and stating that "[t]his plaintiff tried to get her doctor to commit fraud, tried." (5/15/24 Tr. at 507.) DXA unquestionably was an exhibit that helped Defendant, even if in the end the jury returned a damages verdict, and Defendant has pointed to no portion of DXA that caused any notable confusion or unfair prejudice. When combined with the parties' stipulation to the jury that Plaintiff's injury from the fall was confined to her elbow, the Court finds that even with the entirety of DXA before it, there is minimal risk that the jury was confused about the nature and scope of Plaintiff's injuries resulting from her fall versus those impairments that were unrelated to her fall.

Moreover, Defendant's argument for a new trial focuses solely on whether the jury might have been confused in its award of damages to Plaintiff. It does not relate at all to the ultimate issue of Defendant's premises liability for Plaintiff's trip and fall, which the Court addressed in

---

[9] Indeed, in *Adame,* which Defendant cites for support that the Court erred in sending DXA to the jury, the court held that allowing a particular properly admitted exhibit to go back with the jury during deliberations was not prejudicial. 827 F.3d at 647.

7

granting Defendant's separate motion under Fed. R. Civ. P. 50(b) for judgment notwithstanding the verdict. Therefore, as required by Rule 50(c), the Court conditionally denies Defendant's motion for a new trial. That is, the Court wishes to be clear that even absent its grant of Defendant's motion for judgment notwithstanding the verdict, there is no basis for a new trial based on the Court's allowing the entirety of DXA to go to the jury room during deliberations.

Next, Defendant argues that if the Court does not grant its motion for a new trial, remittitur is appropriate, arguing that the evidence adduced at trial does not support the jury's award of $114,000.[10] The purpose of a remittitur is to correct an excessive jury verdict under limited and appropriate circumstances. *Estate of Oglesby v. Berg*, 408 Ill. App. 3d 655, 661 (1st Dist. 2011). Since the determination of damages is a function reserved for the jury, we will not lightly substitute our judgment for that of the jury on this issue. *Kindernay v. Hillsboro Area Hospital*, 366 Ill. App. 3d 559, 572, (5th Dist. 2006). "A verdict will not be set aside by a court unless it is so excessive that it indicates that the jury was moved by passion or prejudice or unless it exceeds the necessarily flexible limits of fair and reasonable compensation or is so large that it shocks the judicial conscience." *Id.*

In this case, Defendant does not present any record-based argument that would come anywhere close to establishing that Plaintiff's award here was irrational. Defendant argues that the jury's verdict was irrational because the amount awarded was "untethered from the record." Defendant points out that Plaintiff's left elbow fracture healed within two months, she does not

---

[10] The Supreme Court has held that state-law standards for evaluating a jury's compensatory award are substantive, not procedural, for purposes of *Erie* analysis. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 432 (1996). "Accordingly, when a federal jury awards compensatory damages in a state-law claim, state law determines whether that award is excessive." *Rainey v. Taylor*, 941 F.3d 243, 252–53 (7th Cir. 2019) (citations omitted).

claim any lost wages, and the Court did not allow information about future medical treatment into evidence.

While the Court acknowledges that the jury's award was generous, it does not find it to be so excessive that it exceeds the "necessarily flexible limits of fair and reasonable compensation." First, while the parties stipulated that Plaintiff's injury was confined to her elbow, neither party introduced any of Plaintiff's medical bills into evidence, even as Defendant had an opportunity to do so and passed on it; the parties initially had agreed to stipulate that Plaintiff's medical bills were $6,185.79 (5/10/24 Final Pretrial Order (D.E. 136) at 2), but neither party chose to present that stipulation to the jury, so there was no evidence before the jury of the medical costs related to Plaintiff's fall. (Mot. at 4.) The record thus does not support Defendant's argument now that the jury's award must be excessive because the case involved only "$6,185.79 in medical special damages." Defendant's Reply in Support of its Motion for New Trial (D.E. 169) at 6. With no evidence of medical bills in the record, the jury was not instructed that medical expenses were among the measure of possible damages; the instruction provided the measure of damages as pain and suffering, loss of normal life, and disfigurement. Final Jury Instructions as Given By the Court (D.E. 141) at 33.

In fact, at the jury instruction conference, the Court ruled in Defendant's favor by limiting the damages instruction to exclude Plaintiff's theories of recovery based on reasonable medical expenses, future pain and suffering, and future loss of normal life, 5/15/24 Order (D.E. 144), agreeing with Defendant's trial brief (D.E. 139) opposing Plaintiff's proposed instructions on future pain and suffering and future loss or normal life. In so ruling, the Court expressly rejected Plaintiff's argument that the jury should be instructed on medical expense damages with no evidence in the record about the amount of the medical bills. (5/15/24 Tr. at 434.) In any event,

with the medical bills not in the record, the jury had no point of reference to support Defendant's argument, on the remittitur motion, that the jury's award was too high, based on the $6,185.79 in medical bills, to compensate for an elbow injury that healed in two months and would not need additional medical treatment.

As for the evidence that was in the record, Plaintiff also presented evidence that the elbow she injured was "bigger and fatter" than the other after the fall, that as of the time of the trial, that it still hurt to press on it, and that she was embarrassed by it to the point of becoming emotional while testifying. (5/14/24 Tr. at 295-96, 300-02.)  Defendant offers no legal authority to support its contention that the evidence before the jury did not support its award and thus the Court cannot conclude on this record that the jury's verdict was so untethered from the evidence as to support remittitur.  The record instead reflects a careful effort by the Court to avoid instructing the jury on unsupported theories of damages and to limit the jury's consideration of damages to evidence in the record.  The $114,000 award was not so untethered from that record to justify remittitur.

## CONCLUSION

For the reasons stated above, the Court conditionally DENIES Defendant's Rule 59 motion for a new trial and denies Defendant's motion in the alternative for remittitur.

**SO ORDERED.**

                                                    **ENTER:**

                                                    **GABRIEL A. FUENTES**
                                                    **United States Magistrate Judge**

**DATED: October 24, 2024**